## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CLEAR SPRING PROPERTY AND** | : | |
| **CASUALTY COMPANY,** | : | **No. 1:21-cv-01581** |
| **Plaintiff/Counterclaim Defendant** | : | |
| | : | **(Judge Kane)** |
| **v.** | : | |
| | : | |
| **MATADOR SPORTFISHING, LLC,** | : | |
| **Defendant/Counterclaim Plaintiff** | : | |

### MEMORANDUM

Before the Court is Plaintiff/Counterclaim Defendant Clear Spring Property and Casualty Company ("Plaintiff" or "Clear Spring")'s Motion for Judgment on the Pleadings, seeking dismissal of Defendant/Counterclaim Plaintiff Matador Sportfishing, LLC ("Defendant" or "Matador")'s counterclaim asserting bad faith under 42 Pa. C.S. § 8371.  (Doc. No. 19.)  For the reasons provided herein, the Court will grant Plaintiff's motion.

## I.   BACKGROUND[1]

On or about April 2019, Defendant submitted to Plaintiff an application for a policy of marine insurance related to a vessel named "Matador" (hereinafter the "vessel").  (Doc. No. 1 ¶¶ 6, 14.)  In connection with that application, Defendant submitted to Plaintiff's agent, Concept Special Risks Ltd. ("Concept"), a copy of a survey performed by Nathan R. Spaulding & Co. Inc. dated March 12, 2018 (the "Spaulding Survey").  (Id. ¶¶ 7, 9.)  Defendant submitted an updated application on or about May 2, 2019, as well as a Letter of Survey Recommendations Compliance (hereafter "LOC") certifying the compliance with all of the recommendations of the Spaulding Survey.  (Id. ¶¶ 10-11.)  Defendant submitted another updated application on or about May 3, 2019.  (Id. ¶ 12.)

---

[1] This factual background is drawn from the allegations of Plaintiff's complaint (Doc. No. 1) and amended complaint (Doc. No. 14).

Pursuant to these applications, and in reliance on Defendant's representations, Concept agreed to issue, on behalf of Plaintiff, Policy No. CSRYP/175415 (the "2019 Policy").  (Id. ¶ 13.)  Plaintiff "agreed to issue the 2019 Policy, affording one hundred fifteen thousand dollars ($115,000.00) in first-party property damage coverage for the vessel named 'Matador' (hereinafter 'the Vessel') against the risks detailed therein, with an inception date of May 2, 2019, based upon the representations set forth in, and the material information disclosed in, the applications, the LOC, and the other facts represented during the process of applying."  (Id. ¶ 14.)  The 2019 Policy contained the following warranties: "[i]t is warranted that the Scheduled Vessel shall be used solely for private and pleasure purposes, and will not be used for Charter, hire lease or any other commercial activity"; and "[i]f the Scheduled Vessel is fitted with fire extinguishing equipment, then it is warranted that such equipment is properly installed and is maintained in good working order.  This includes the weighing of tanks once a year, certification/tagging and recharging as necessary."  (Id. ¶¶ 15-16.)

On or about April 2020, Defendant requested a renewal of coverage, and Plaintiff's agent, Concept, agreed to issue Policy No. CSRYP/182085 (the "2020 Policy") on behalf of Plaintiff, providing for $75,000.00 in first-party property damage coverage for the vessel, with an inception date of May 2, 2020, again based on "the representations set forth in, and the material information disclosed in, the applications, the LOC, the renewal request, and other facts represented during the process of applying."  (Id. ¶¶ 17-19.)  The 2020 Policy contained the same warranties described above.  (Id. ¶¶ 20-21.)

Plaintiff alleges that Defendant submitted another request to renew coverage in May 2021, and, in connection with that request for renewal, did not disclose that the vessel had been chartered in February 2021.  (Id. ¶¶ 22-23.)  Accordingly, pursuant to this request, and in

reliance on Defendant's representations, Plaintiff's agent, Concept, agreed to issue, on behalf of Plaintiff, Policy No. CSRYP/202273 (the "2021 Policy"), affording $75,000.00 in first-party property damage for the vessel, again based on the representations and information provided in the application process. (Id. ¶¶ 24-25.)  The same warranties described above were applicable to the policy. (Id. ¶¶ 26-27.)

On June 9, 2021, during the period of coverage afforded under the 2021 Policy, the vessel suffered a partial sinking, which prompted Plaintiff to investigate the incident and conclude that the vessel's fire extinguisher system had not been certified or tagged since 2014. (Id. ¶¶ 28-30.) Plaintiff's investigation concluded that: (1) the partial sinking of the vessel: "was not caused by a fortuitous event and was not an event for which Plaintiff's policy of marine insurance would afford any coverage" and "was not caused by an accidental external event"; and (2) "the Vessel was unseaworthy prior to the inception of the Policy and at the time of the partial sinking." (Id. ¶¶ 31-33.)  Plaintiff's investigation also concluded that, when Defendant sought a renewal of coverage in 2020 and 2021, it "failed to disclose facts which would have been material to the judgment of the underwriter who considered the renewal request." (Id. ¶ 34.)  Defendant subsequently made a claim against Plaintiff under the terms of the 2021 Policy, demanding payment for the damage incurred when the vessel suffered a partial sinking. (Id. ¶ 35.)

Plaintiff filed a complaint in this Court on September 14, 2021, seeking a declaratory judgment under 28 U.S.C. § 2201 to the effect that it has no obligation to provide coverage under the 2021 Policy.  The complaint attached the 2021 Policy as Exhibit 11. (Doc. No. 1-3.)  The complaint for declaratory judgment invoked the Court's admiralty jurisdiction by noting "IN ADMIRALTY" in the caption and by reference to Rule 9(h) of the Federal Rules of Civil

Procedure.[2]  The complaint invoked the Court's admiralty jurisdiction under 28 U.S.C. § 1333, and asserted the following causes of action: (1) breach of the fire extinguisher warranty, (2) lack of fortuity, (3) exclusion for damages to engines, etc., (4) unseaworthiness, (5) uberrimae fidei, and (6) non-disclosure or misrepresentation.[3]

Defendant filed an answer to Plaintiff's complaint asserting thirty-three (33) affirmative defenses and three counterclaims, which included a demand for a jury trial.  (Doc. No. 12.) Specifically, in counterclaim count one Defendant asserts a claim for declaratory judgment, seeking a declaration from the Court that the partial sinking of the vessel is an insurable event for which coverage is afforded under the 2021 Policy.  (Id. at 45-46.)  Counterclaim count two asserts a claim for breach of contract related to Plaintiff's failure to pay insurance benefits to Defendant arising out of the June 9, 2021 partial sinking of the vessel.  (Id. at 46-47.)  Finally, in counterclaim count three, Defendant asserts a claim of bad faith under Pennsylvania's bad faith statute, 42 Pa. C.S. § 8371 (id. at 47-50), specifically alleging that Plaintiff "failed to conduct a timely, reasonable, and appropriate investigation of the partial sinking before filing suit against its insured," and that "its refusal to conduct a timely, reasonable, and appropriate investigation;

---

[2] Federal Rule of Civil Procedure 9(h) provides as follows:

> (h)   Admiralty or Maritime Claim.
> (1)   How Designated.  If a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claims as an admiralty or maritime claim for purposes of Rule 14(c), 38(e), and 82 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.  A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated.

See Fed. R. Civ. P. 9(h).

[3]  "Uberrimae Fidei refers to the federal admiralty law duty of "utmost good faith."  (Doc. No. 1 ¶ 75.)

promptly acknowledge coverage; and pay [Defendant] the sums to which it is entitled was frivolous, unfounded, and without a reasonable basis, thus constituting insurance bad faith by [Plaintiff] in violation of 42 Pa. C.S. § 8371" (id. at 47, 48).

Subsequent to the filing of Defendant's answer and counterclaims, Plaintiff filed an amended complaint (Doc. No. 14), which is now the operative complaint in this matter. The amended complaint made several clerical/housekeeping changes to Plaintiff's original complaint, and also included two paragraphs of additional factual allegations. (Id. at 17, 20.) Plaintiff filed an answer to Defendant's counterclaims (Doc. No. 15), and Defendant filed an answer to Plaintiff's amended complaint on January 19, 2022 (Doc. No. 18).

On January 26, 2022, Plaintiff filed a motion for judgment on the pleadings as to Defendant's bad faith counterclaim (Doc. No. 19), with a brief in support (Doc. No. 21). Defendant filed a brief in opposition (Doc. No. 24), and Plaintiff's reply was filed on March 2, 2022 (Doc. No. 25). Accordingly, Plaintiff's motion for judgment on the pleadings has been fully briefed and is ripe for disposition.[4]

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that a party may move for judgment on the pleadings once the pleadings are closed. See Fed. R. Civ. P. 12(c). A Rule 12(c) motion is "designed to provide a means of disposing of cases when the material facts are not in dispute between the parties and a judgment on the merits can be achieved by focusing on the content of the competing pleadings." See 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed. 2020). When assessing such a motion, "the court must 'view the facts

---

[4] Plaintiff also filed, on January 7, 2022, a Motion to Strike Defendant's Jury Demand in connection with its counterclaims. (Doc. No. 16.) That motion has also been fully briefed and will be addressed in a separate Memorandum/Order.

presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to

the nonmoving party,' and may not grant the motion 'unless the movant clearly establishes that

no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of

law.'" See Wolfington v. Reconstructive Orthopaedic Associates II PC, 935 F.3d 187, 195 (3d

Cir. 2019) (quoting In re Asbestos Prods. Liab. Litig. (No. VI), 822 F. 3d 125, 133 n.6 (3d Cir.

2016)).

## III.    DISCUSSION

Plaintiff's motion for judgment on the pleadings is based on its argument that the policy

of insurance forming the basis of this action contains a choice of law provision that precludes

Defendant's statutory bad faith claim under Pennsylvania law.[5]  Accordingly, Plaintiff maintains

that the claim fails as a matter of law.  As Plaintiff notes, the choice of law provision contained

in the 2021 Policy (and attached to Plaintiff's complaint) provides as follows:

> It is hereby agreed that any dispute arising hereunder shall be adjudicated according
> to well-established, entrenched principles and precedents of substantive United
> States Federal Admiralty law and practice but where no such well-established
> entrenched precedent exists, this insuring agreement is subject to the substantive
> laws of the State of New York.

(Doc. No. 1-3 at 39.)

Plaintiff notes that policies of marine insurance are governed by federal admiralty law,

under which choice of law clauses are valid and enforceable.  (Doc. No. 21 at 4.)  Plaintiff cites

St. Paul Fire & Marine Ins. Co. v. Board of Comm'rs of Port of New Orleans, 418 F. App'x 305

(5th Cir. 2011), and Galilea, LLC v. AGCS Marine Insurance Co., 879 F.3d 1052 (9th Cir.

2018), two cases in which the relevant insurance policy contained a choice of law clause

dictating application of federal admiralty law, or absent such law, New York law.  (Doc. No. 21

---

[5]  Plaintiff asserted the choice of law clause as an affirmative defense to Defendant's third cause
of action in its Answer.  (Doc. No. 15 at 12.)

at 5-6.)  In both cases the relevant courts determined that New York law should apply, despite contrary forum state law that the insured argued should govern the dispute.  (Id.)  Plaintiff cites numerous district and appellate cases finding the exact choice of law provision at issue here valid and enforceable.  (Id. at 7.)  Based on the above principle, Plaintiff maintains that "[t]he federal admiralty caselaw is clear and uniform that, where a policy of marine insurance contains a choice of law clause, no state law, including a bad faith statute, can be applied which contravenes the policy's choice of law clause."  (Id.)  Accordingly, Plaintiff maintains that, since the policy's "choice of law clause necessarily requires that all aspects of the dispute be governed by federal admiralty law or, in the absence thereof, New York Law"—and given that Defendant's bad faith claim "arises under neither federal admiralty law nor New York law"—the claim fails as a matter of law.  (Id. at 12.)

In opposition to Plaintiff's motion, Defendant argues that its bad faith claim under Pennsylvania law is a statutorily created tort, and as such, is not subject to a choice of law provision in the 2021 Policy.  (Doc. No. 24 at 2.)  Defendant maintains that the language of the choice of law provision contains no express provision prohibiting extra-contractual claims such as its bad faith claim "which do not arise out of the insurance policy and are permitted as a tort under Pennsylvania law."  (Id. at 4.)  Defendant notes that the provision states that "any dispute arising hereunder shall be adjudicated according to the well-established, entrenched principles and precedents of the substantive United States Federal Admiralty law and practice," and maintains that "[t]here is no well-established, entrenched principles or precedents of federal admiralty law that prohibits [Defendant] from raising bad faith insurance claims—which are extraneous to the policy itself and speak, rather, to [Plaintiff's] conduct—pursuant to Pennsylvania law."  (Id. at 4-5.)  Defendant argues that the choice of law provision further states

that, if no well-established principles and precedents of federal maritime law exist, "this insuring agreement is subject to the substantive laws of the State of New York." (Id. at 5.) Accordingly, Defendant argues that the express language of the provision limits the application of New York law to the insuring agreement, so that "[a]ny claim that is extraneous to or does not arise from the policy itself is not subject to New York state law." (Id.)

Defendant further argues that Pennsylvania public policy weighs strongly in favor of applying Pennsylvania law to permit Defendant's bad faith claim to proceed, such that "even if the language of the policy here sufficiently encompassed [Defendant's] extra-contractual claims, Pennsylvania law should nonetheless apply to [Defendant's] Section 8371 counterclaim," citing The Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972). (Id. at 6.) In The Bremen, as Defendant notes, the Supreme Court stated that a "contractual choice-of-law forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision." See 407 U.S. at 15. Defendant argues that Pennsylvania's insurance bad faith statute, and the case law interpreting it, "show a clear public policy behind Section 8371 actions and the Commonwealth's desire to protect Pennsylvania insureds." (Doc. No. 24 at 7.) Accordingly, based on the above, Defendant maintains that Pennsylvania law should govern its bad faith claim, as Defendant is a limited liability company with a Pennsylvania domicile, and while New York law would have little interest in protecting Defendant, Pennsylvania has a compelling reason for doing so by way of application of its bad faith statute. (Id. at 8.)

Upon careful review of the arguments of the parties and the relevant law, the Court is unpersuaded by Defendant's effort to exclude its statutory bad faith claim from the scope of the

choice of law provision contained in the 2021 Policy.  As noted above, the relevant choice of

law clause provides as follows:

> It is hereby agreed that any dispute arising hereunder shall be adjudicated according
> to well-established, entrenched principles and precedents of substantive United
> States Federal Admiralty law and practice but where no such well-established,
> entrenched precedent exists, this insuring agreement is subject to the substantive
> law of the State of New York.

(Doc. No. 1-3 at 39.)  In Great Lakes Insurance SE v. Raiders Retreat Realty Co., LLC, 521 F.

Supp. 3d 580 (E.D. Pa. 2021), a district court in the Eastern District of Pennsylvania recently

summarized the general principles applicable to enforceability of choice of law clauses under

federal maritime law, as follows:

> "Under federal maritime choice of law rules, contractual choice of law provisions
> are generally recognized as valid and enforceable."  Great Lakes Reinsurance (UK)
> PLC v. Durham Auctions, Inc., 585 F.3d 236, 242 (5th Cir. 2009); see also Cassin,
> 544 F.3d at 260 (resolving marine insurance dispute pursuant to the contractual
> choice-of-law provision).
>
> "A choice of law provision in a marine insurance contract will be upheld in the
> absence of evidence that its enforcement would be unreasonable or unjust."  2
> Thomas J. Schoenbaum, Admiralty & Mar. Law § 19.6 (6th ed. 2020); see also St.
> Paul Fire & Marine Ins. Co. v. Bd. Of Comm'rs of Port of New Orleans, 418 F.
> App'x 305, 309 (5th Cir. 2011) ("The parties' choice of law clause in an admiralty
> case will govern 'unless the [chosen] state has no substantial relationship to the
> parties or the transaction or the state's law conflicts with the fundamental purposes
> of maritime law.'" (alteration in original) (quoting Stoot v. Fluor Drilling Servs.,
> Inc., 63 F.3d 166, 197 n.36 (3d Cir. 1995) (en banc) ("[A] freely-bargained for,
> reasonable choice of law clause whose operation does not contradict a strong public
> policy of the United States . . . would typically be enforced under federal maritime
> law.").

See Raiders Retreat, 521 F. Supp. 3d at 585-86.

As an initial matter, based on extensive authority approving similar (and in some cases,

identical) choice of law clauses in marine insurance contracts, it appears that the choice of law

clause in the 2021 Policy is valid and enforceable, and Defendant does not argue to the contrary.

Defendant's challenge to the application of the provision to bar a statutory bad faith claim under

Pennsylvania law boils down to its effort to parse the two clauses in the choice of law provision and argue that the second, dependent clause—which states that "this insuring agreement is subject to the law of the State of New York"—means that only claims arising under the agreement are subject to the law of the State of New York, leaving open the possibility that statutory or extra-contractual claims arising under Pennsylvania law could apply here.

Defendant's effort to construe the choice of law clause in the 2021 Policy in favor of permitting a statutory bad faith claim under Pennsylvania law is unavailing.  There are numerous persuasive district court cases where similar (or identical) choice of law clauses were applied to dismiss state statutory claims (including bad faith claims).  In general, these cases rely on well-established contract interpretation principles and conclude that the two clauses of the choice of law provision "should not be read in isolation, and so New York law applies to extra contractual claims that 'arise hereunder', not just claims that are part of 'this insuring agreement.'"  See Great Lakes Insurance SE v. Andersson, 544 F. Supp. 3d 196, 200 (D. Mass. 2021). Accordingly, in Andersson the court dismissed the insured's counterclaim for bad faith because New York does not recognize a bad faith tort in the insurance context.  See id. at 202-03.  The court in Andersson found persuasive the reasoning of the court in Raiders Retreat, where, after finding an identical choice of law clause to be valid and enforceable, the court granted the plaintiff/insurer's motion for judgment on the pleadings as to counts four and five of defendant/insured's counterclaims, which asserted claims under Pennsylvania's bad faith statute and Unfair Trade Practices and Consumer Protection Law.  See 521 F. Supp. 3d at 582, 589.[6] Similarly, in Great Lakes Reinsurance (UK) PLC v. Tico Time Marine LLC, No. 4:10-cv-02060,

---

[6]  This decision is currently on appeal to the Third Circuit, where it appears that the case has been fully briefed but has not yet been set for oral argument.  See Great Lakes Insurance SE v. Raiders Retreat Realty Co., LLC, No. 21-1562 (3d Cir. filed Mar. 25, 2021).

2011 WL 1044154 (S.D. Tex. Mar. 16, 2011), the district court construed an identical choice of law provision to encompass extracontractual claims where the "claims would not exist if there were no underlying insurance agreement" and therefore refused to apply a demand for attorneys' fees based on a Texas statute.  See id. at *4-5; see also Deep Sea Financing, LLC v. British Marine Luxembourg, S.A., No. 4:09-cv-00022, 2010 WL 3603794, at *8 (S.D. Ga. May 13, 2010) (concluding that claims based on Georgia's bad faith statute were subject to dismissal because the application of the statute was precluded by the insurance policy's choice of law clause);  Great Lakes Reinsurance (UK) PLC v. Sea Cat I, LLC, 653 F. Supp. 2d 1193 (W.D. Ok. Aug. 31, 2009) (applying identical choice of law clause in a marine insurance contract and holding that the insured's bad faith tort claim under Oklahoma law was subject to dismissal).

The Court is similarly unpersuaded by Defendant's argument that "even if the language of the policy here sufficiently encompass[es] [Defendant's] extra-contractual claims," Pennsylvania public policy should permit Defendant's Section 8371 bad faith claim to proceed. In support of this public policy argument, Defendant primarily relies on The Bremen; however, that case is inapposite.  The Bremen involved a choice of forum clause, not a choice of law clause, and the Ninth Circuit in Galilea described why that case provides no assistance to a party arguing that a choice of law clause in a marine insurance policy can be defeated by the public policy of the forum state.  The Ninth Circuit stated as follows:

> There are two critical problems with Galilea's reliance on The Bremen.  First, that case did not discuss federal maritime rules about choice-of-law clauses, but rather about forum selection clauses.  By contrast, Galilea and the Underwriters agreed to a kind of forum selection provision—arbitration—and also to a separate choice-of-law provision—federal maritime law, and where that law has gaps, New York law. And as we have already established, here there is no gap in federal maritime law to fill with law from any state, Montana included, as the FAA supplies the governing arbitration law for maritime transactions.

> Second, and more foundationally, The Bremen considered whether the public policy of the forum where suit was brought—there, federal public policy as supplied by federal maritime law—outweighed the application of the law of other countries.  In other words, under the rule of The Bremen and its progeny, courts consider the application of the laws of otherwise equally situated fora in light of the concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability.   But here we encounter an unequal, hierarchical relationship between federal maritime law and state law; again, state law governs disputes arising under marine insurance contracts only in the absence of a federal statute, a judicially fashioned admiralty rule, or a need for uniformity in admiralty practice.

See Galilea, 879 F.3d at 1060 (internal quotation marks and citations omitted).  Even accepting that Pennsylvania has an interest in the application of its bad faith statute to protect a Pennsylvania insured, "the public policy of a state where a case was filed cannot override the presumptive validity, under federal maritime choice-of-law principles, of a provision in a marine insurance contract where the chosen forum has a substantial relationship to the parties or the transaction."  See Raiders Retreat, 521 F. Supp. 3d at 588.  Here, Defendant does not argue that the chosen forum (New York) does not have a substantial relationship to the parties or the transaction.

Based on the clear weight of authority described above, and because the choice of law clause in the 2021 Policy is valid and enforceable, and dictates application of the "well-established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice" or, "where no such well-established, entrenched precedent exists," "the substantive laws of the State of New York," and because Defendant's bad faith claim arises under neither federal admiralty law nor New York law, the claim fails as a matter of law and will be dismissed.

**IV.    CONCLUSION**

For all of the foregoing reasons, the Court will grant Plaintiff's motion for judgment on the pleadings and dismiss Defendant's counterclaim for statutory bad faith under Pennsylvania law.  An appropriate Order follows.