IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CLEAR SPRING PROPERTY AND CASUALTY COMPANY,** | : | |
| Plaintiff/Counterclaim Defendant | : | No. 1:21-cv-01581 |
| | : | **(Judge Kane)** |
| v. | : | |
| | : | |
| **MATADOR SPORTFISHING, LLC,** | : | |
| Defendant/Counterclaim Plaintiff | : | |

## MEMORANDUM

Before the Court is Plaintiff/Counterclaim Defendant Clear Spring Property and Casualty Company ("Plaintiff" or "Clear Spring")'s Motion to Strike Jury Demand, which asks the Court to strike Defendant/Counterclaim Plaintiff Matador Sportfishing, LLC ("Defendant" or "Matador")'s jury demand associated with its counterclaims.  (Doc. No. 16.)  For the reasons provided herein, the Court will grant Plaintiff's motion.

## I.   BACKGROUND[1]

On or about April 2019, Defendant submitted to Plaintiff an application for a policy of marine insurance related to a vessel named "Matador" (hereinafter the "vessel").  (Doc. No. 1 ¶¶ 6, 14.)  In connection with that application, Defendant submitted to Plaintiff's agent, Concept Special Risks Ltd. ("Concept"), a copy of a survey performed by Nathan R. Spaulding & Co. Inc. dated March 12, 2018 (the "Spaulding Survey").  (Id. ¶¶ 7, 9.)  Defendant submitted an updated application on or about May 2, 2019, as well as a Letter of Survey Recommendations Compliance (hereafter "LOC") certifying the compliance with all of the recommendations of the Spaulding Survey.  (Id. ¶¶ 10-11.)  Defendant submitted another updated application on or about May 3, 2019.  (Id. ¶ 12.)

---

[1] This factual background is drawn from the allegations of Plaintiff's complaint (Doc. No. 1) and amended complaint (Doc. No. 14).

Pursuant to these applications, and in reliance on Defendant's representations, Concept agreed to issue, on behalf of Plaintiff, Policy No. CSRYP/175415 (the "2019 Policy"). (Id. ¶ 13.) Plaintiff "agreed to issue the 2019 Policy, affording one hundred fifteen thousand dollars ($115,000.00) in first-party property damage coverage for the vessel named 'Matador' (hereinafter 'the Vessel') against the risks detailed therein, with an inception date of May 2, 2019, based upon the representations set forth in, and the material information disclosed in, the applications, the LOC, and the other facts represented during the process of applying." (Id. ¶ 14.) The 2019 Policy contained the following warranties: "[i]t is warranted that the Scheduled Vessel shall be used solely for private and pleasure purposes, and will not be used for Charter, hire lease or any other commercial activity"; and "[i]f the Scheduled Vessel is fitted with fire extinguishing equipment, then it is warranted that such equipment is properly installed and is maintained in good working order. This includes the weighing of tanks once a year, certification/tagging and recharging as necessary." (Id. ¶¶ 15-16.)

On or about April 2020, Defendant requested a renewal of coverage, and Plaintiff's agent, Concept, agreed to issue Policy No. CSRYP/182085 (the "2020 Policy") on behalf of Plaintiff, providing for $75,000.00 in first-party property damage coverage for the vessel, with an inception date of May 2, 2020, again based on "the representations set forth in, and the material information disclosed in, the applications, the LOC, the renewal request, and other facts represented during the process of applying." (Id. ¶¶ 17-19.) The 2020 Policy contained the same warranties described above. (Id. ¶¶ 20-21.)

Plaintiff alleges that Defendant submitted another request to renew coverage in May 2021, and, in connection with that request for renewal, did not disclose that the vessel had been chartered in February 2021. (Id. ¶¶ 22-23.) Accordingly, pursuant to this request, and in

2

reliance on Defendant's representations, Plaintiff's agent, Concept, agreed to issue, on behalf of Plaintiff, Policy No. CSRYP/202273 (the "2021 Policy"), affording $75,000.00 in first-party property damage for the vessel, again based on the representations and information provided in the application process. (Id. ¶¶ 24-25.) The same warranties described above were applicable to the policy. (Id. ¶¶ 26-27.)

On June 9, 2021, during the period of coverage afforded under the 2021 Policy, the vessel suffered a partial sinking, which prompted Plaintiff to investigate the incident and conclude that the vessel's fire extinguisher system had not been certified or tagged since 2014. (Id. ¶¶ 28-30.) Plaintiff's investigation concluded that: (1) the partial sinking of the vessel: "was not caused by a fortuitous event and was not an event for which Plaintiff's policy of marine insurance would afford any coverage" and "was not caused by an accidental external event"; and (2) "the Vessel was unseaworthy prior to the inception of the Policy and at the time of the partial sinking." (Id. ¶¶ 31-33.) Plaintiff's investigation also concluded that, when Defendant sought a renewal of coverage in 2020 and 2021, it "failed to disclose facts which would have been material to the judgment of the underwriter who considered the renewal request." (Id. ¶ 34.) Defendant subsequently made a claim against Plaintiff under the terms of the 2021 Policy, demanding payment for the damage incurred when the vessel suffered a partial sinking. (Id. ¶ 35.)

Plaintiff filed a complaint in this Court on September 14, 2021, seeking a declaratory judgment under 28 U.S.C. § 2201 to the effect that it has no obligation to provide coverage under the 2021 Policy. The complaint attached the 2021 Policy as Exhibit 11. (Doc. No. 1-3.) The complaint for declaratory judgment invoked the Court's admiralty jurisdiction by noting "IN ADMIRALTY" in the caption and by reference to Rule 9(h) of the Federal Rules of Civil

Procedure.[2]  The complaint invoked the Court's admiralty jurisdiction under 28 U.S.C. § 1333, and asserted the following causes of action: (1) breach of the fire extinguisher warranty, (2) lack of fortuity, (3) exclusion for damages to engines, etc., (4) unseaworthiness, (5) uberrimae fidei, and (6) non-disclosure or misrepresentation.[3]

Defendant filed an answer to Plaintiff's complaint asserting thirty-three (33) affirmative defenses and three counterclaims, which included a demand for a jury trial.  (Doc. No. 12.) Specifically, in counterclaim count one Defendant asserts a claim for declaratory judgment, seeking a declaration from the Court that the partial sinking of the vessel is an insurable event for which coverage is afforded under the 2021 Policy.  (Id. at 45-46.)  Counterclaim count two asserts a claim for breach of contract related to Plaintiff's failure to pay insurance benefits to Defendant arising out of the June 9, 2021 partial sinking of the vessel.  (Id. at 46-47.)  Finally, in counterclaim count three, Defendant asserts a claim of bad faith under Pennsylvania's bad faith statute, 42 Pa. C.S. § 8371.  (Id. at 47-50.)

Subsequent to the filing of Defendant's answer and counterclaims, Plaintiff filed an amended complaint (Doc. No. 14), which is now the operative complaint in this matter.  The

---

[2] Federal Rule of Civil Procedure 9(h) provides as follows:

> (h)   Admiralty or Maritime Claim.
> (1)   How Designated.  If a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claims as an admiralty or maritime claim for purposes of Rule 14(c), 38(e), and 82 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.  A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated.

See Fed. R. Civ. P. 9(h).

[3] "Uberrimae Fidei refers to the federal admiralty law duty of "utmost good faith." (Doc. No. 1 ¶ 75.)

amended complaint made several clerical/housekeeping changes to Plaintiff's original complaint, and also included two paragraphs of additional factual allegations. (Id. at 17, 20.) Plaintiff filed an answer to Defendant's counterclaims (Doc. No. 15), and Defendant filed an answer to Plaintiff's amended complaint on January 19, 2022 (Doc. No. 18).

On January 7, 2022, Plaintiff filed a motion to strike Defendant's jury demand (Doc. No. 16), with a brief in support (Doc. No. 17). Defendant filed a brief in opposition (Doc. No. 22), and Plaintiff filed a reply (Doc. No. 23). Accordingly, Plaintiff's motion to strike Defendant's jury demand has been fully briefed and is ripe for disposition.[4]

## II. DISCUSSION

Federal district courts have original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." See 28 U.S.C. § 1333(1). As Plaintiff notes, a complaint seeking a declaratory judgment as to a policy of marine insurance properly falls within federal admiralty jurisdiction. See Puritan Ins. Co. v. Eagle S.S. Co. S.A., 779 F.2d 866 (1985). Federal Rule of Civil Procedure 9(h) provides the procedure for invoking the court's admiralty jurisdiction, stating that, if a claim "is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleadings may designate the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e) and 82." See Fed. R. Civ. P. 9(h). Under Rule 38(e), there is no right to a jury trial for admiralty or maritime claims filed pursuant to Rule 9(h). See Fed. R. Civ. P. 38(e). "It is established beyond question that the Seventh Amendment's guarantee of a jury trial in civil actions at common law does not extend to the trial

---

[4] Plaintiff also filed, on January 26, 2022, a Motion for Judgment on the Pleadings as to count three of Defendant's counterclaim. (Doc. No. 19.) That motion has also been fully briefed and will be addressed in a separate Memorandum/Order.

of admiralty or maritime claims." Am. S.S. Owners Mut. Protc. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc., No. 06-cv-03123, 2008 WL 2980919, at *1 (S.D.N.Y. Aug. 1, 2008).

As noted above, Plaintiff's motion to strike asks the Court to strike Defendant's jury demand associated with its counterclaims, on the basis that Plaintiff filed this action invoking the Court's admiralty jurisdiction under 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure, which Plaintiff maintains means that the entire action is subject to non-jury trial by the Court. (Doc. No. 17 at 4.) Plaintiff argues that a marine insurance company has a "right to a full and complete non-jury adjudication of its Rule 9(h) action for declaratory judgment, even in the event of the assertion of a counterclaim alleging state law causes of action, such as bad faith." (Id. at 5.) Plaintiff maintains that "even where there is a cross-claim or a counterclaim which has an alternative basis for jurisdiction, such as diversity, the Plaintiff's original designation of the case as an admiralty action filed under Rule 9(h) will 'rule the roost' and prevent and jury from being empaneled for any reason in this litigation." (Id.)

In support of its argument, Plaintiff relies on authority from the Fifth and Eleventh Circuits, as well as district court cases from the First and Second Circuits. Plaintiff acknowledges that the Third Circuit has yet to rule on this issue, but notes that a district court in the District of New Jersey held that an insurer's election of a non-jury trial was protected in the presence of an intertwined counterclaim by the defendant subject to the court's diversity jurisdiction. See Windsor Mount Joy Mut. Ins. Co. v. Johnson, 264 F. Supp. 2d 258 (D.N.J. 2003). In that case, the court concluded that the plaintiff's election of a non-jury trial could not be "undone" by the defendant by way of assertion of a counterclaim subject to the court's diversity jurisdiction, as the plaintiff's choice to proceed under Rule 9(h) "determine[d] the character of the litigation." See id. at 263.

6

In opposition to the Plaintiff's motion, Defendant argues that depriving it of a right to a jury trial on its counterclaims because Plaintiff won the "race to the courthouse" is "an untenable framework and [would] result in the prejudicial and impermissible stripping of [Defendant's] right to a jury trial." (Doc. No. 22 at 2.) Defendant relies on authority from the Ninth and Fourth Circuits in arguing that a plaintiff's election under Rule 9(h) cannot trump a counterclaimant's right to a jury (id. at 7-8) and also argues that such a result is "inconsistent with authority within the Third Circuit" (id. at 2), pointing to a 2005 district court case out of the Western District of Pennsylvania, Continental Ins. Co. v. Industry Terminal & Salvage, Co., No. 05-cv-01142, 2005 WL 2647950 (W.D. Pa. Oct. 17, 2005). In that case, the court relied on authority from the Ninth Circuit and rejected the district court's decision in Windsor Mount Joy, finding that, in a declaratory judgment action filed pursuant to the court's admiralty jurisdiction, a defendant retained its right to a jury trial on its counterclaims. See id. at *2 (rejecting the Windsor Mount Joy analysis and concluding that granting a motion to strike defendant's jury demand "would essentially be encouraging parties to engage in an inauspicious race to the courthouse").

Defendant further argues that Plaintiff filed its declaratory judgment complaint in this court "[b]efore informing [Defendant] of any findings or conclusions related to [Plaintiff's] investigation," which Defendant maintains is "prejudicial" and results in "impermissible stripping of [Defendant's] right to a jury trial." (Doc. No. 22 at 1-2.) In its reply brief, Plaintiff responds to this argument by reviewing (and supporting with documentation) its investigation into the partial sinking of Defendant's vessel beginning on June 11, 2021, and culminating on the date it filed this action, September 14, 2021, arguing that such a timeline for investigation is "customary and reasonable." (Doc. No. 23 at 6-8; Doc. Nos. 23-1 through 23-6.)

7

The issue presented by Plaintiff's motion is not an uncommon one.  A district court in the Southern District of New York recently succinctly described the issue (and the majority rule) as follows:

> The present motion presents a question that has arisen in a considerable number of reported cases.  A plaintiff properly designates its claim as an admiralty or maritime claim under Rule 9(h).  Subject matter jurisdiction in the district court would also exist under the diversity statute.  The defendant asserts common law counterclaims (such as breach of contract) and demands a jury trial on the counterclaims.  Plaintiff moves to strike the jury demand.  The rule derived from the distinct majority of decisions is that if the defendant's counterclaims arise out of the same contract as the plaintiff's claims and involve the same operative facts, the plaintiff's Rule 9(h) designation trumps defendant's jury demand, and the entire case will be tried to the court without a jury.

See Great Lakes Reinsurance (UK) SE v. Herzig, 413 F. Supp. 3d 177, 185 (S.D.N.Y. 2019).  However, the interplay between a plaintiff's invocation of admiralty jurisdiction and the potential right to a jury trial on a defendant's counterclaim, especially in the context of an action seeking declaratory relief, remains an unsettled area of the law.  See, e.g., Brett P. Hargaden, Salvaging the Term "Suitor": How the Declaratory Judgment Act Has Commandeered Congressional Intent, 22 Roger Williams U. L. Rev. 453 (2017).

As noted above, the Third Circuit has not spoken on this issue, but two district courts within the Third Circuit have come to the opposite conclusion when faced with this question.  Plaintiff relies on a 2003 decision from the district court in the District of New Jersey in Windsor Mount Joy, a case where the plaintiff insurer brought an action seeking a declaratory judgment that it need not provide coverage under a policy issued to the defendant for his pleasure boat.  See 264 F. Supp. 2d at 159.  The plaintiff invoked the court's admiralty jurisdiction under 28 U.S.C. § 1333 and Federal Rule of Civil Procedure 9(h).  See id. at 160.  The defendant asserted

counterclaims for, inter alia, breach of contract.  See id.[5]  The defendant's pleadings included a jury trial demand.

The plaintiff moved to strike the jury trial demand on the basis that it had invoked the court's jurisdiction under Section 1333 and Rule 9(h) and that the defendant could not interfere with its non-jury election.  See id. at 161.  The plaintiff also argued that the court lacked diversity jurisdiction because (1) there was not complete diversity of the parties and (2) the sum at issue was not more than $75,000.  See id.  The defendant cross-moved to amend his answer to invoke the court's diversity jurisdiction, arguing that a party may invoke jurisdiction under the diversity statute in an admiralty action under the savings-to-suitors clause of Section 1333.  See id.

In granting the plaintiff's motion to strike the jury demand, the court first noted that the Seventh Amendment and its jury trial right does not apply to admiralty actions, as there was no common law right to a jury trial in such cases.  See id. at 162.  Further, the court noted that certain statutes confer a jury trial right as to certain causes of action that were once solely within the court's admiralty jurisdiction—for example, the Jones Act, which covers claims by injured seamen.  See id.  The court concluded that the plaintiff's Rule 9(h) non-jury election was expressly protected by Rule 38(e) and "cannot be undone by [defendant] through the assertion of a counterclaim that might have been subject to the [c]ourt's jurisdiction under Section 1332 and a jury trial if brought in a separate action."  See id. (citing St. Paul Fire & Marine Ins. Co. v. Holiday Fair, No. 94-cv-05707, 1996 WL 148350, at *2 (S.D.N.Y. Apr. 2, 1996) (granting insurer's motion to strike counterclaimant's jury-trial demand in admiralty action for judgment declaring no coverage provided)).

---

[5] Defendant also filed a third-party complaint.

In connection with its decision, the court noted that it was unclear whether the defendant sought a jury trial on all issues or a severance as to his counterclaim; however, it concluded that, if the former, such a result would undo the plaintiff's Rule 9(h) election, and if the latter, such a result is untenable as "[plaintiff's] causes of action and [defendant's] counterclaim will be resolved based on the same closely-intertwined facts." See id. (citing Harrison v. Flota Mercante Grancolombiana, 577 F.2d 968, 987 (5th Cir. 1978) (affirming part of order denying jury-trial demand)). The court noted that the defendant may have been entitled to a jury trial if he had brought an action before the plaintiff and demanded a jury trial. The court cited Third Circuit precedent for the proposition that, when two related cases are filed separately and later consolidated, the court should give precedence to the choice of the party who first filed an action. See id. at 163 (citing Blake v. Farrell Lines, 417 F.2d 264 (3d Cir. 1969) (affirming order of district court ordering all factual issues tried to a jury after consolidating an action brought to recover damages for personal injury and an indemnity action invoking admiralty jurisdiction where personal damages action was filed first), and Newfound Mgmt. Corp. v. Lewis, 131 F.3d 108, 117 (3d Cir. 1997) (clarifying decision in Blake as based on the fact that the personal injury suit "as filed first was a necessary predicate to the indemnity suit")).

Based on the above, the Windsor Mount Joy court concluded that the plaintiff "brought its admiralty cause of action—and made a Rule 9(h) election—first," and "[t]hus, it is entitled to determine the character of the litigation." See id. The court found that "[a]n insurer's action for a judgment declaring that it need not provide coverage under a policy 'is a normal and orderly procedure,'" and therefore, "the [c]ourt will not be encouraging parties to engage in an unseemly 'race to the courthouse' in granting [plaintiff's] motion." See id. at 164 (quoting St. Paul Fire, 1996 WL 148350, at *2). In making its decision, the court acknowledged contrary authority,

10

specifically Wilmington Trust v. United States District Court for the District of Hawaii, 934 F.2d 1026 (9th Cir. 1991), where the Ninth Circuit concluded that the defendant was entitled to a jury trial in connection with its counterclaim brought in response to an admiralty cause of action, finding that one party's election to proceed in admiralty did not deprive the other party of a jury trial right.

The court's decision in Windsor Mount Joy was in accord with the decision of the Fifth Circuit Court of Appeals in Harrison, supra, where the court determined that the plaintiff's election of a non-jury adjudication in admiralty controlled the entire litigation in which both plaintiff and defendant asserted claims for damages. Harrison was decided in 1978, before the Fifth Circuit's split into the Fifth and Eleventh Circuits. Accordingly, courts within the Eleventh Circuit have considered themselves bound by the Harrison decision, as evidenced by St. Paul Fire & Marine Insurance Company v. Lago Canyon, Inc., 561 F.3d 1181 (11th Cir. 2009), where the Circuit concluded that the district court correctly granted a motion to strike a jury demand in a case where the plaintiff insurer filed a declaratory judgment complaint invoking the court's admiralty jurisdiction by designating the action under Rule 9(h). In connection with its decision, the Circuit addressed the defendant's argument that Harrison should not apply because Harrison involved a complaint for damages, as opposed to a claim for declaratory relief, instead arguing that the Supreme Court's decision in Beacon Theatres, Inc. v. Westover, 359 U.S. 500 (1959) (which involved an action for declaratory relief but not admiralty jurisdiction) required a different result. See St. Paul Fire, 561 F.3d at 1188. The Eleventh Circuit stated that Harrison in no way depended on that distinction, but, rather, "addressed what happens when both admiralty and some other ground of federal jurisdiction exist in the same case and the plaintiff invokes admiralty jurisdiction under Rule 9(h)." See id. Accordingly, declaring itself bound by

11

Harrison, the Eleventh Circuit affirmed the district court's decision striking the jury demand, while acknowledging a circuit split on the issue. See id. District courts within the Fifth and Eleventh Circuits have continued to follow Harrison and St. Paul's Fire on this point. See Great Lakes Ins. SE v. Crabtree, No. 20-cv-81544, 2022 WL 110686 (S.D. Fl. Jan. 12, 2022); Great Lakes Ins. SE v. Gray Group Investments, LLC, No. 20-cv-02795, 2021 WL 5907710 (E.D. La. Dec. 14, 2021); Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Vinardell Power Systems, Inc., No. 19-cv-20093, 2019 WL 1440383 (S.D. Fl. Mar. 28, 2019).

In addition, in Great Lakes Insurance SE v. Andersson, 525 F. Supp. 3d 205 (D. Mass. 2021), a district court in the District of Massachusetts recently granted a motion to strike a jury demand on an insured's counterclaims in a declaratory judgment action brought by an insurer under the court's admiralty jurisdiction. In that case, the court acknowledged that "[t]here is a lack of consensus among the federal courts over whether a defendant is entitled to a jury trial when he brings a compulsory legal counterclaim in response to a plaintiff's admiralty claim." See id. at 207. In reaching its decision, the court referenced the First Circuit's decision in Concordia Co., Inc. v. Panek, 115 F.3d 67 (1st Cir. 1997), as providing support for the Eighth Circuit's approach in Koch Fuels, Inc. v. Cargo of 13,000 Barrels of No. 2 Oil, 704 F.2d 1038 (8th Cir. 1983), over competing law from other circuits, without expressly adopting it. See Andersson, 525 F. Supp. 3d at 207. In Koch Fuels, the Eighth Circuit approved a district court's decision to hold separate jury trials for the plaintiff's admiralty claim (conversion) and the defendant's legal counterclaim (breach of contract). See 704 F.2d at 1042. The admiralty claim concerned whether a charter agreement existed, while the legal counterclaim asserted breach of the charter agreement. See id. The Eighth Circuit recognized that admiralty claims are ordinarily tried to the bench, and that trial courts should preserve the right to a jury trial

whenever possible, ultimately concluding that severance of the claims was appropriate because "both parties, using different triers of fact, could prevail on their respective claims without prejudicing the other party or arriving at inconsistent results," and further, that separate trial served "interests of preserving constitutional rights, clarity, or judicial economy." See id. at 1041, 1043.

The Andersson court acknowledged that at least five courts within the First Circuit had applied the Koch Fuels test in similar situations, and accordingly, applied the test to determine whether, in a "hybrid case with admiralty claims and legal counterclaims," holding separate trials on the admiralty/declaratory judgment and legal claims was appropriate. See 525 F. Supp. 3d at 208. The court concluded that holding separate trials on the declaratory judgment and breach of contract claims "would not serve judicial economy because the claims were inextricably intertwined," given that "[t]o prevail on declaratory judgment, [the plaintiff] will need to prove it is not liable under the Policy because [defendant] sailed outside the navigational limits or failed to keep [the vessel] seaworthy," while "[defendant] will need to prove the opposite: that [plaintiff] had no valid reason to deny coverage." See id. The court found that "the claims are mirror images of one another and depend on the same universe of facts, so holding separate trials does not serve judicial efficiency." See id. at 208-09. In addition, the court noted that separate trials could lead to inconsistent results if (1) the court found in favor of plaintiff on the declaratory judgment claim, and (2) a jury found that plaintiff breached the insurance contract by not providing coverage. See id. at 209.[6] Accordingly, the court granted the plaintiff's motion to

---

[6] The court found that the issue as to whether to hold separate trials on the declaratory judgment claim and the defendant's counterclaim based on Chapter 176D "presents a closer question." See id. at 209. Defendant's Chapter 176D counterclaim was based on his allegations that the plaintiff's acts or omissions after the stranding of the vessel caused the loss of the vessel's chartplotter, which was the best source of evidence as to whether the defendant had violated the policy's navigational limits, and that the plaintiff misrepresented the status of defendant's claim

13

strike the defendant's jury demand on his counterclaims, determining that all claims should be tried to the bench. See id.[7]

District courts in the Second Circuit have largely (with one exception) followed the "majority" rule described above and held that, when a plaintiff properly designates its claim as an admiralty claim under Rule 9(h), and when subject matter jurisdiction would exist uder the diversity statute as well, if a defendant's counterclaims arise out of the same contract as the plaintiff's claims and involve the same operative facts, the plaintiff's Rule 9(h) designation trumps any jury demand, and the entire case is tried to the court. See Herzig, 413 F. Supp. 3d at 185; Am. S.S. Owners' Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc., No. 06-cv-03123, 2008 WL 2980919, at *1 (S.D.N.Y. Apr. 17, 2007), aff'd sub nom. Fed. Ins. Co. v. Keybank Nat. Ass'n, 340 F. App'x 5 (2d Cir. 2009); Market Am. Ins. Co. v. Linhart, 11-cv-05094, 2012 Wl 2930207, at *3-4 (E.D.N.Y. July 11, 2012); Norwalk Cove Marina, Inc. v. S/V ODYSSEUS, 100 F. Supp. 2d 113, 114 (D. Conn. 2000); but see Sphere Drake Ins. PLC v. J. Shree Corp., 184 F.R.D. 258, 261 (S.D.N.Y. 1999) (following Ninth Circuit precedent and holding that defendant was entitled to jury trial on compulsory counterclaims sounding in law, despite the fact that the plaintiff filed the action pursuant to Federal Rule of Civil Procedure

---

so it could file suit before denying the claim. See id. at 206. However, the court ultimately concluded that, under the facts, it was "impossible for both parties to prevail using different factfinders without prejudicing each other or arriving at inconsistent results," because if the insurer's denial of coverage was correct, no violation of Chapter 176D was possible. See id. at 209.

[7] This decision is currently on appeal to the First Circuit, see Great Lakes Reinsurance SE v. Andersson, No. 21-1648 (1st Cir. filed Aug. 26, 2021); however, a review of that docket reveals that, on October 28, 2021, the First Circuit issued an Order to Show Cause as to why the case should not be dismissed for lack of jurisdiction, because "[t]he orders striking the jury demand and denying reconsideration of the order striking the jury demand do not appear to be subject to interlocutory appeal." See id. The First Circuit has not yet acted on the appellant's response to the Order to Show Cause. See id.

9(h)).  As the court in Herzig recently noted, "[i]n the twenty years since Sphere Drake Ins. PLC v. J. Shree Corp. was decided, no court in this District has followed that decision."  See 413 F. Supp. 3d at 186.

On the other side of the issue, as noted above, Defendant relies on Industry Terminal & Salvage, Co., a district court decision from the Western District of Pennsylvania, decided two years after Windsor Mount Joy, in support of its contrary position.  That case involved a declaratory judgment action filed by an insurer invoking the court's admiralty jurisdiction, where the defendant filed a counterclaim alleging state law claims of breach of contract and statutory bad faith and made a demand for a jury.  The plaintiff filed a motion to strike the jury demand.  In denying the plaintiff's motion to strike the jury demand, the court noted that there was not controlling case law directly on point in this circuit, but was persuaded by the analysis of the Ninth Circuit Court of Appeals in Wilmington Trust, supra.  The court noted that the Wilmington Trust court relied on the Supreme Court's decision in Beacon Theatres, supra, and its holding that a right to a jury trial should not be lost through a prior determination of equitable claims.[8]  The district court found persuasive the Wilmington Trust court's conclusion that the Seventh Amendment right to a jury trial "overcomes another party's preference for a bench trial when those interests conflict."  See 2005 WL 2647950, at *1.[9]  In Wilmington Trust, the Ninth Circuit

---

[8]  In Beacon Theatres, the Supreme Court held, in the context of a Sherman Act antitrust claim, that "[i]f [the defendant] would have been entitled to a jury trial . . . against [the plaintiff], it cannot be deprived of that right merely because the plaintiff took advantage of the availability of declaratory relief to sue [the defendant] first."  See 359 U.S. at 504.

[9]  The court stated that, in a non-maritime context, the Third Circuit has cited and followed Beacon Theatres and reversed a district court decision denying a jury trial to counterclaimants/defendants.  See 2005 Wl 2647950, at *2 n.2 (citing Eldredge v. Gourley, 505 F.2d 769 (3d Cir 1974) (finding that when a defendant in an equitable proceeding asserted a counterclaim raising factual issues, the resolution of which would determine plaintiff's request for equitable relief, defendant's jury trial demand was improperly denied)).

acknowledged that its conclusion "may result in the entire case being tried before a jury" in the event that "all the claims are closely related factually," and stated that "[i]f the claims are not related factually, then the district court may order separate trials in order to preserve the non-jury aspect of admiralty jurisdiction." See Wilmington Trust, 934 F.2d at 1032. In connection with its decision, the district court stated in Industry Terminal & Salvage, Co. that it did not find the analysis of the court in Windsor Mount Joy "to be compelling." See 2005 WL 2647950, at *2. The district court concluded that striking the defendant's jury demand "would essentially be encouraging parties to engage in an inauspicious race to the courthouse," which it "would not sanction." See id. Accordingly, the district court determined that it would, in the exercise of its discretion:

> first submit defendant's breach of contract action to the jury with special interrogatories on the issues of liability and damages. Should the jury find that plaintiff breached the contract by denying coverage, the [c]ourt will utilize the same jury in a separate determination on defendant's claim of statutory bad faith, pursuant to Fed. R. Civ. P. 42(b). After the breach of contract and bad faith determinations, the [c]ourt will consider the jury's answers to the special interrogatories on the breach of contract action, pursuant to Fed. R. Civ. P. 39(c), in the declaratory judgment determination.

See id.

Subsequent to the Industry Terminal & Salvage, Co. decision, the Fourth Circuit Court of Appeals acknowledged a circuit split on the issue but followed the lead of the Ninth Circuit and concluded that an insurer's election to proceed in admiralty in a declaratory judgment action did not affect an insured's right to a jury trial on a breach of contract claim, relying on the Supreme Court's decision in Beacon Theatres. See In re Lockheed Martin Corp., 503 F.3d 351 (4th Cir. 2007). The Fourth Circuit stated that "[i]n our view, allowing a plaintiff's Rule 9(h) designation to preclude a jury trial on compulsory legal counter- or cross-claims effectively and improperly elevates a traditional mode of trial in admiralty (a bench trial) to a right not to proceed before a

16

jury," and concluded that Beacon Theatres, despite involving the Sherman Act instead of admiralty jurisdiction, dictated the court's conclusion that "[the defendant] cannot lose its right to a jury trial simply because [the plaintiff] initiated the declaratory judgment action." See id. at 358-60.

Upon careful review of the above authority, and acknowledging the lack of controlling precedent in the Third Circuit, this Court finds the "majority" view—which gives precedence to the plaintiff's choice of admiralty jurisdiction (and a bench trial) in an action for declaratory relief when a defendant's counterclaims arise out of the same contract as the plaintiff's claims and involve the same operative facts, resulting in the entire case being tried to the court without a jury—to be the more persuasive position. In doing so, the Court notes that the Windsor Mount Joy court, in addition to relying on Fifth Circuit precedent, relied on a district court decision from the Southern District of New York, St. Paul Fire & Marine Ins. Co. v. Holiday Fair, 1996 WL 148350, at *2 (S.D.N.Y. 1996). District courts in the Second Circuit have continued to follow that case, and the majority rule, in the years since, most recently in 2019 in Herzig. Here, Defendant's asserted counterclaims for declaratory judgment, breach of contract, and bad faith, arise out of the same contract of marine insurance as Plaintiff's declaratory judgment claim and involve the same operative facts. Accordingly, Plaintiff's Rule 9(h) designation governs, and both Plaintiff's declaratory judgment claim and Defendant's counterclaims will be tried to the Court without a jury.

## IV.  CONCLUSION

For all of the foregoing reasons, the Court will grant Plaintiff's motion to strike Defendant's jury demand as to its counterclaims. An appropriate Order follows.